IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 13-31201

_____

D.C. Docket No. 2:11-CV-922

United States Court of Appeals
Fifth Circuit

**FILED**

September 9, 2015

Lyle W. Cayce
Clerk

PATRICK KENNEDY,

      Petitioner - Appellee

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

      Respondent - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

J U D G M E N T

      This cause was considered on the record on appeal and was argued by counsel.

      It is ordered and adjudged that the judgment of the District Court is reversed.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31201

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2015

Lyle W. Cayce
Clerk

PATRICK KENNEDY,

    Petitioner - Appellee

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

    Respondent - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-922

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:*

    The district court granted Patrick Kennedy federal habeas relief on his equal protection claim of sex discrimination in the selection of grand jury forepersons. It held that the state court's decision denying relief was contrary to or involved an unreasonable application of clearly established federal law and was therefore not entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The district court further

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 13-31201    Document: 00513343645    Page: 2    Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 3 of 14

No. 13-31201

determined that Kennedy had successfully established a prima facie case of discrimination and that the state had failed to meet its burden in rebuttal. Because the state court's decision was entitled to AEDPA deference, we REVERSE the district court's grant of habeas relief.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 1998, a Jefferson Parish grand jury indicted Patrick Kennedy on one count of aggravated rape of a child. His eight-year-old stepdaughter was the victim. A jury found Kennedy guilty in August 2003 and determined that he should be sentenced to death. The Louisiana Supreme Court affirmed Kennedy's conviction and sentence on direct appeal. The United States Supreme Court set aside Kennedy's death sentence, holding that the Constitution prohibits a state from imposing the death penalty for rape of a child where "the crime did not result, and was not intended to result, in death of the victim." *Kennedy v. Louisiana*, 554 U.S. 407, 413 (2008). On remand, Kennedy was resentenced to life in prison.

Even before his first trial, Kennedy raised the claim of discrimination in the selection of the foreperson for his grand jury in a motion to quash the indictment. He argued that Louisiana's system for selecting the head of a grand jury was susceptible of abuse and that there had been systematic sex discrimination in the selection of forepersons. At a January 2002 hearing on the motion, Kennedy introduced data showing the sex of each foreperson selected in Jefferson Parish between 1979 and 1998. Although Kennedy presented 19 years of data, the court limited its consideration to the ten-year period preceding Kennedy's indictment, starting May 24, 1988, and ending September 10, 1998. During that ten-year period, 19 grand jury forepersons were selected. In accordance with Louisiana's system at the time, those individuals were selected by the judges of the 24th Judicial District Court. Of

Case: 13-31201   Document: 00513343645   Page: 3   Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 4 of 14

No. 13-31201

the 19, ten were white males, six were white females, one was a black female, and two were black males. Thus, a woman was selected 36.8% of the time.

That data was compared to several statistical samples, including: (1) the 1990 and 2000 Jefferson Parish census figures, (2) average voter registration from Jefferson Parish for 1990-2000, and (3) the number of women called randomly to serve on grand juries during the ten-year period. The 1990 census figures showed that 51.95% of the Jefferson Parish population was female. Comparing that figure to the 36.8% calculation resulted in an absolute disparity of 15.15%. The 2000 census data showed that females represented 52% of the population, resulting in an absolute disparity of 15.2%. Considering the voter-registration data for 1990-2000, females represented 54.21%, showing an absolute disparity of 17.41%. The number of women randomly called to serve on grand juries during the ten-year period was 50.2%, indicating an absolute disparity of 13.4%. Therefore, the absolute disparities ranged from 13.4% to 17.41%.

At the hearing, the court informed the prosecutor: "Let me save you some time. I find that they've made a prima facie case. Go forward with your case." The court did not provide reasons for its ruling. The state then put on a case in rebuttal. It presented testimony from Judge Marion Edwards, who, in his former position as an assistant district attorney, had taken part in the foreperson selection process for approximately 19 years. He had not been involved with Kennedy's grand jury, but he testified generally about the selection process and what judges looked for in choosing a foreperson.

The trial court concluded that the state had rebutted Kennedy's prima facie case and had shown that the criteria used to select grand jury forepersons were "racially and gender neutral" and thus permissible. Kennedy filed an interlocutory appeal, which was granted. *See State v. Kennedy*, 823 So. 2d 411 (La. Ct. App. 2002). The Louisiana Fifth Circuit focused on the degree of

Case: 13-31201 Document: 00513343645 Page: 4 Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB Document 60 Filed 02/17/16 Page 5 of 14

No. 13-31201

underrepresentation. *See id.* The court rejected Kennedy's argument that the court should have considered his 19 years of data instead of only data from the ten years preceding his indictment. The court explained that because there had been a 1999 amendment allowing the foreperson to be randomly selected, there was "ample justification for placing more emphasis on the preceding 10 years rather [than] going back 19 years." *Id.* at 416, 419.

The court detailed both the absolute and comparative disparity figures. *Id.* at 416–19. The absolute disparities ranged from 13.4% to 17.41%. *Id.* at 414. With regard to the comparative disparity figures, the court concluded that the "figures show[ed] that females served as grand jury forepersons 68-70% of the time in relation to their overall representation in the population groups, or conversely, [] they were under represented 29-32% of the time." *Id.* at 419. Though the court was presented with several different absolute and comparative disparities, the court concluded that the relevant benchmark for discerning underrepresentation of women was the "total number of female grand jurors randomly called to serve," which was 50.2%. *Id.* Comparing that figure to the 36.8% figure resulted in an absolute disparity of 13.4%. *Id.* The court considered that disparity the relevant one. *Id.*

The court concluded that there is "no magic, controlling number." *Id.* at 417–19. Rather, "it is the totality of the circumstances that must be considered[.]" *Id.* at 419. "When the degree of the under representation of women is considered along with all the other factors such as the improvement in the selection process in the preceding 10 years rather than 19 years, the large size of the population segment and correlative small comparative disparity, and the fact that only 19 grand juries [were] considered, we cannot conclude that the defendant made a *prima facie* showing of purposeful discrimination . . . ." *Id.* at 420. The court noted that had Kennedy shown a prima facie case, Judge Edwards's testimony would have been "as a matter of

4

Case: 13-31201      Document: 00513343645      Page: 5      Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 6 of 14

No. 13-31201

law" insufficient to rebut a prima facie case as "[j]urisprudence has shown that the State should present the testimony of the actual person(s) who made the selection of the grand jury foreperson." *Id.* at 415 n.4.

The Louisiana Supreme Court denied Kennedy's application for supervisory writs without giving reasons. *See State v. Kennedy*, 836 So. 2d 43 (La. 2003).

Kennedy then proceeded to trial. He was convicted in August 2003 and sentenced to death. On direct appeal of his conviction to the Louisiana Supreme Court, the court noted in an unpublished appendix that "[t]he court of appeal correctly found that the defendant failed to establish a prima facie case of discrimination in the selection of the grand jury foreperson." *State v. Kennedy*, 957 So. 2d 757 (La. 2007).

In December 2009, Kennedy filed a state application for post-conviction relief. The trial court and court of appeal both declined to address the merits of his discrimination claim, and the Louisiana Supreme Court denied review.

Kennedy filed a federal habeas petition under 28 U.S.C. § 2254 in April 2011. The magistrate judge issued a report and recommendation in September 2012, recommending that Kennedy's petition be denied. The magistrate judge explained that the Supreme Court has not "set a bright line disparity benchmark below which there is no equal protection violation and above which a constitutional violation exists." Thus, the state court's "determination that the gender disparity ranging from 13% to 18% was insufficient to prove a prima facie case of discrimination is not violative of Supreme Court law."

In October 2013, the district court issued an order adopting the report and recommendation as to all claims except Kennedy's sex discrimination claim. The court held that the Louisiana Fifth Circuit's determination that Kennedy failed to make a prima facie showing of sex discrimination was "contrary to, or involved an unreasonable application of, clearly established

Case: 13-31201    Document: 00513343645    Page: 6    Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 7 of 14

No. 13-31201

Federal law, as determined by the Supreme Court of the United States . . . by virtue of the United States Court of Appeals for the Fifth Circuit's own pronouncement of what it considers clearly established Federal law as determined by the Supreme Court," and therefore was not entitled to AEDPA deference. The Fifth Circuit "pronouncement" to which the district court referred was *Mosley v. Dretke*, 370 F.3d 467 (5th Cir. 2004). We will discuss that case later. The district court ordered that the state either reindict Kennedy within 180 days or release him. The state appeals.

## DISCUSSION

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *Higgins v. Cain*, 720 F.3d 255, 260 (5th Cir. 2013). "[W]hether the grand jury was selected in a systematically unrepresentative . . . manner, has long been recognized to be a question of law or a mixed question of fact and law." *Rideau v. Whitley*, 237 F.3d 472, 486 (5th Cir. 2000).

Under AEDPA, a federal court may not grant habeas relief after an adjudication on the merits in a state court proceeding unless the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The dispositive issue before us is whether the district court erred in holding that the Louisiana Fifth Circuit's decision was not entitled to AEDPA

Case: 13-31201    Document: 00513343645    Page: 7    Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 8 of 14

No. 13-31201

deference.[1] Relying on Section 2254(d)(1), the district court determined that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ."

Under Section 2254(d)(1), "[a] state court's decision is 'contrary to' clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Woodfox v. Cain*, 772 F.3d 358, 367 (5th Cir. 2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "A state court's decision involves an 'unreasonable application' of clearly established federal law if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

For purposes of Section 2254(d)(1), "'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 412). "[A]n unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citation and quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

---

[1] As a preliminary argument, the state contends that this court's "pronouncements" in *Mosley* do not constitute clearly established federal law for purposes of Section 2254(d)(1). The state's argument is misguided. This court in *Mosley* did not announce its own framework for determining whether substantial underrepresentation had been shown. Instead, this court merely identified levels of underrepresentation that the Supreme Court and this court had found to be substantial enough to constitute a prima facie case. Indeed, the district court expressly noted that *Mosley* provided a "relevant measurement of the body of Supreme Court precedent at the time Kennedy's conviction became final."

Case: 13-31201    Document: 00513343645    Page: 8    Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 9 of 14

No. 13-31201

Rather, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101 (citation and quotation marks omitted). "If this standard is difficult to meet – and it is – that is because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (citation and quotation marks omitted).

Considering the "formidable barrier" to relief erected by AEDPA, we must determine whether the Louisiana Fifth Circuit's decision was entitled to deference. *See id.* We first look to the relevant Supreme Court precedent identified and applied by the state court. The state court looked to a then-recent Louisiana Supreme Court decision, *State v. Langley*, 813 So. 2d 356 (La. 2002), for an analysis of the applicable Supreme Court decisions. *See Kennedy*, 823 So. 2d at 415–18. First, the court cited *Langley*'s discussion of the Supreme Court's three-part test for establishing a prima facie case of grand jury discrimination:

> (1) that those discriminated against belong to a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied; (2) that the degree of under-representation must be proved by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time; and (3) that the selection procedure is susceptible of abuse or is not racially neutral so as to support the presumption of discrimination raised by the statistical showing.

*Id.* at 415 (citing *Castaneda v. Partida*, 430 U.S. 482, 494–95 (1977) (quotation marks omitted)). The court focused on whether Kennedy had shown substantial underrepresentation over a significant period of time.

Case: 13-31201    Document: 00513343645    Page: 9    Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB  Document 60  Filed 02/17/16  Page 10 of 14

No. 13-31201

In considering the degree of underrepresentation, the court identified several Supreme Court absolute-disparity cases, including: *Whitus v. Georgia*, 385 U.S. 545 (1967); *Jones v. Georgia*, 389 U.S. 24 (1967); and *Turner v. Fouche*, 396 U.S. 346 (1970). *Kennedy*, 823 So. 2d at 418. As the state court explained, the Supreme Court found that the absolute disparities in each of those cases, ranging from 14.7% to 23%, were sufficient to satisfy the second prong of the three-part test. *Id.* The court then cited an Eleventh Circuit decision in explaining that absolute disparity figures cannot be considered in isolation. *Id.* at 417–18 (citing *Bryant v. Wainwright*, 686 F.2d 1373, 1375−76 (11th Cir. 1982)). Rather, a court must also consider "other criteria such as the number of years involved, the size of the sampling, and the number of the class in the general population . . . ." *Id.* at 417.

The court then noted that, in Kennedy's case, the absolute disparities for the relevant ten-year period[2] ranged from 13.4% to 17.41%. *Id.* at 418–19. The range of absolute disparities resulted from an analysis of data representing both general and eligible population statistics. *Id.* The court decided to limit its focus to eligible population statistics, specifically the "total number of female grand jurors randomly called to serve[.]" *Id.* at 419. The court compared that figure, 50.2%, to the percentage of female forepersons for the ten-year period, 36.8%, resulting in an absolute disparity of 13.4%. *Id.* The court then considered the 13.4% absolute-disparity figure "along with all the other factors," including: (1) "the improvement in the selection process in the preceding 10 years rather than 19 years," (2) "the large size of the population segment and correlative small comparative disparity," and (3) "the fact that only 19 grand juries [were] considered . . . ." *Id.* at 420. Considering those

---

[2] Kennedy's counsel stated during oral argument that Kennedy was not challenging the state court's consideration of the ten-year period as opposed to the 19-year period requested by Kennedy. Thus, that issue is not before us in this appeal.

9

Case: 13-31201    Document: 00513343645    Page: 10    Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 11 of 14

No. 13-31201

factors along with the 13.4% absolute-disparity figure, the court was unable to "conclude that [Kennedy] made a *prima facie* showing of purposeful discrimination in the selection of grand jury forepersons." *Id.*

The district court determined that the state court's analysis was "contrary to, or involved an unreasonable application of, clearly established Federal law," and its decision was therefore not entitled to AEDPA deference. We disagree. The district court based its conclusion on a passage from this court's *Mosley* decision: "It is true that the Supreme Court has never announced mathematical standards for the demonstration of systematic exclusion of blacks. This Court has, however, recognized that absolute disparities of 19.7%, 14.7% and 13.5% are sufficient" to satisfy the second part of the Supreme Court's three-part test for establishing a prima facie case of grand jury discrimination. 370 F.3d at 479 (citation and quotation marks omitted). The district court reasoned that the absolute disparities here, ranging from 13.4% to 17.41%, are similar to those previously found sufficient by the Supreme Court and thus "*Mosley* mandates a finding of discrimination in the selection of grand jury forepersons . . . ."

We note initially that the state court's consideration of eligible over general population statistics was entitled to deference. The Supreme Court has not addressed whether eligible or general population statistics should be used when both are contained in the record. *See United States ex rel. Barksdale v. Blackburn*, 639 F.2d 1115, 1123 (5th Cir. 1981) (en banc). It was not unreasonable for the state court to use the 13.4% absolute-disparity figure.

Recently, we observed that "the Supreme Court has specifically allowed the following disparities to make out a *prima facie* case of grand jury discrimination: 14.7%; 18%; 19.7%; 23%." *Woodfox*, 772 F.3d at 375. The Supreme Court has never held that an absolute disparity as low as 13.4% is sufficient to establish a prima facie case. *See Blackburn*, 639 F.2d at 1122–23

10

Case: 13-31201    Document: 00513343645    Page: 11    Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 12 of 14

No. 13-31201

(discussing range of disparities found satisfactory). It could be argued that the Louisiana Fifth Circuit's decision was not unreasonable on that basis alone. We do not so decide, in part because the state court did not base its decision solely on the 13.4% figure. Instead, the court also considered other factors.

The state court's consideration of those other factors was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Though the district court considered several additional factors, the most compelling factor is the small sample size in this case.[3] The Supreme Court has explained that sample size is an important consideration when courts weigh the significance of a given absolute disparity. *See Rose v. Mitchell*, 443 U.S. 545, 571 (1979). In *Rose*, the Court noted that, even assuming that the relevant absolute disparity in that case was 30%, the statistical significance of the disparity depended on the number of grand jury forepersons selected during the relevant time period. *See id.* "If the number [of foremen] was small enough, the disparity between the ratio of Negroes chosen to be foreman to the total number of foremen, and the ratio of Negroes to the total population of the county, might not be 'sufficiently large [that] it is unlikely that [this disparity] is due solely to chance or accident.'" *Id.* (quoting *Castaneda*, 430 U.S. at 494 n.13). This discussion reflects the importance of considering a statistical disparity in context.

In *Rideau*, this court emphasized that the Supreme Court has never announced a rigid framework for considering absolute-disparity evidence. We noted that an absolute disparity of 13.5% "*might*, standing alone, support a presumption of discrimination." *Rideau*, 237 F.3d at 486–87 (emphasis added).

---

[3] The state court also considered: (1) the improvement in the selection process, and (2) the large size of the population segment and correlative small comparative disparity. We do not comment on the court's consideration of these factors as the small sample size taken with the 13.4% absolute disparity is enough to hold that the state court's decision was entitled to deference.

11

Case: 13-31201     Document: 00513343645     Page: 12     Date Filed: 01/15/2016
Case 2:11-cv-00922-HGB   Document 60   Filed 02/17/16   Page 13 of 14

No. 13-31201

We concluded that we "need not decide that, however." *Id.* at 487. "The Supreme Court has stressed that it has never announced mathematical standards for the demonstration of 'systematic exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors.'" *Id.* (quoting *Alexander v. Louisiana*, 405 U.S. 625, 630 (1972)). "'[W]e do not rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical improbability alone, for the selection procedures themselves were not racially neutral.'" *Id.* (quoting *Alexander*, 405 U.S. at 630). We concluded that, as in *Alexander*, "additional factors supplement[ed] the statistical disparity," making it unnecessary to determine whether the statistical disparity alone was sufficient. *Id.* Much like how *Rideau* looked at additional factors beyond mere statistical disparity, the small sample size here similarly provides an additional relevant factor.

In sum, the Supreme Court has never held that a court must consider an absolute-disparity calculation in isolation. The state court's decision, giving the absolute disparity less weight in light of the small sample size presented, was not contrary to and did not involve an unreasonable application of clearly established federal law. Accordingly, the district court erred in holding that the state court's decision was not entitled to AEDPA deference.

REVERSED.

# United States Court of Appeals
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

January 15, 2016

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

          No. 13-31201    Patrick Kennedy v. Burl Cain, Warden
                          USDC No. 2:11-CV-922

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                        Sincerely,

                                        LYLE W. CAYCE, Clerk

                                        By: _____
                                        Dawn D. Victoriano, Deputy Clerk
                                        504-310-7717

cc w/encl:
     Ms. Juliet Lee Clark
     Mrs. Cecelia Trenticosta Kappel